SUNFLOWER BANK v. PITTS.

[66 South. 810.]

1. BROKERS. *Unilateral contract. Performance. Evidence. Parol evidence. Admissibility. Varying contracts. Rights to recover compensation.*

Although a contract, which recites that an owner agrees to list his lands with a broker for sale, and that the broker may sell at a fixed price, may be deemed a unilateral contract and without consideration, yet it may be enforced by the broker if he accepts it and incurs expense in an attempt to find a purchaser.

2. EVIDENCE.   *Parol evidence.  Admissibility.  Varying contracts.*
> Although a contract in writing for the listing of land with a broker
> for sale, did not recite nor imply a consideration, parol evidence
> that the broker had incurred expense in attempting to find a
> purchaser, and that it was understood at the time and before
> the execution of the contract, that the broker should advertise
> and make every effort to sell the land, was not inadmissible as
> varying the written contract.

3. EVIDENCE.   *Parol evidence.  Varying contracts.*
> When the terms of a written contract do not recite any considera-
> tion, the real consideration may be shown by parol evidence.

4. EVIDENCE.   *Parol evidence.  Varying contract.*
> Under a written contract providing that an owner agreed to list
> land with a broker for sale at a fixed price, parol evidence that
> the broker, on the land being listed with him incurred expense
> in advertising for a purchaser, was admissible to show perform-
> ance on his part, of the contract.

5. TRIAL ISSUES.   *Submission to jury.*
> It is proper to submit an issue to the jury when the evidence is
> conflicting.

6. BROKERS.   *Contracts.  Employment.  Right to recover compensation.*
> An owner of land, who listed it with a broker for sale, under a
> contract giving the broker the exclusive right to sell at a special
> price and binding both parties not to sell for less, cannot defeat
> a recovery by the broker by making a sale for a less price.

APPEAL from the circuit court of Sunflower county.
HON. MONROE MCCLURG, Judge.

Suit by W. T. Pitts, against the Sunflower Bank.  From
a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*J. Holmes Baker* and *Campbell & Cashin,* for appel-
lant.

*Moody & Handy,* for appellee.

COOK, J., delivered the opinion of the court.

W. T. Pitts sued the Sunflower Bank in the circuit
court of Sunflower county and obtained a judgment for

two thousand, five hundred dollars. From this judgment this appeal is prosecuted.

The declaration is as follows:

"State of.Mississippi, Sunflower County.

"In the Circuit Court thereof.

"W. T. Pitts v. Sunflower Bank. No, ———.

"W. T. Pitts, a resident of Sunflower county, Mississippi, by Moody & Percy, his attorenys, complains of the Sunflower Bank, a corporation incorporated under the laws of the state of Mississippi, with its domicile and chief place of business in the county of Sunflower of said state, and says:

"I. That on or about the 22d day of July, 1910, he, the plaintiff, and the defendant entered into a certain contract in writing for the sale of certain lands described therein, in which contract it was, among other things, provided that if the defendant should sell the lands described in said contract without the seeming efforts of the plaintiff, during the said contract, defendant agreed to pay plaintiff a commission of five per cent. of the amount of such sale. A copy of this contract is filed herewith, marked 'Exhibit A,' and asked to be taken and treated as part hereof. This contract was entered into for a valuable consideration.

"II. Plaintiff avers and charges that after the execution of said contract, and while same was in full force and effect, the defendant, without any seeming effort on the part of plaintiff sold said land to various parties, and received therefor a sum aggregating more than thirty-eight thousand dollars, and in accordance with the provision of said contract, the defendant became indebted and promised to pay to the plaintiff a commission of five per cent. on the amount of said sale, amounting to the sum of one thousand nine hundred dollars; and being so indebted, it became and was the duty of the defendant to pay to the plaintiff the said sum of one thousand nine hundred dollars when said sale had been perfected, and

which sale, plaintiff avers, was perfected and closed many months ago. Yet although the defendant is indebted to the plaintiff in the said sum of money, it has not paid the same to the plaintiff, although often thereunto requested so to do; to the damage of plaintiff of the sum of two thousand five hundred dollars, for which he sues and asks judgment."

"Exhibit A to Plaintiff's Declaration.

"Office of W. T. Pitts, Real Estate, Indianola, Miss.
"List of Lands of Sunflower Bank, Indianola, Miss.

"This contract, made and entered into on this the 22d day of July, 1910, between Sunflower Bank of Indianola, Mississippi, party of the first part, and W. T. Pitts, of Indianola, Sunflower county, Mississippi, party of the second part, and by the terms of which it is agreed by and between the parties hereto that the party of the first part hereby agrees to list for sale with the party of the second part, as his agent, the following described property situate in the county of Sunflower and state of Mis-sissippi, to wit: West half and southeast quarter of section twenty-five, township nineteen, range six west, four hundred and eighty acres, also the southeast quarter of section twenty-six, and the south half of the northeast quarter of section twenty-six, and the south half of the southwest quarter section twenty-six, township nineteen, range six west, three hundred and twenty acres; also, lot one and the east half of lot six, all of lot three, and the north half of lots four and seven, and the west half of lot five, section thirty-five township nineteen, range six west; also, the north half of lots one and two, and the south half of lot two, section thirty-four, township nineteen, range six west, all containing one thousand, two hundred and twenty-four acres.

"It is agreed and understood by and between the parties to this contract that this land shall not be offered for sale by either party for over or under thirty dollars

per acre, and that if the party of the first part sells this land without the seeming efforts of the party of the second part during this contract, party of the first part is to pay the party of the second part a commission of five per cent. of the amount of the sale. If party of the second part sells this land for party of the first part, he is to receive a commission of ten per cent. of the amount of sale.

"It is further agreed, by and between the parties hereto, the the said party of the second part is authorized to sell said property at thirty dollars per acre, and the said party of the second part, as agent of the party of the first part, shall have the exclusive right to sell said property at and for the price above mentioned, and the consideration for this contract is one dollar cash this day paid to me by the party of the second part, the receipt of which is hereby acknowledged.

"It is further agreed, by and between the parties to this contract, that in the event the said party of the second part shall procure a purchaser for the above-described property at and for a price not less than the price per acre above mentioned, the party of the first part agrees, when called upon during the existence of this contract, to make a warranty deed to said property to any party named by the party of the second part and to pay to the party of the second part ten per cent. of the net proceeds of said sale if the same be sold at and for the price per acre above mentioned, and all sums over and above the said sum per acre above mentioned that said property may be sold for as his commissions in obtaining a purchaser.

"This contract shall be in full force and effect from and after the date first above written until revoked by sixty days written notice by either party hereto.

"Witness our signatures this, the 22d day of July, A. D. 1910."

To this declaration defendant filed the plea of general issue, giving notice thereunder that evidence would be offered to prove:

"That after the alleged execution of the contract sued on, and before any sale of the lands therein described had been effected or negotiated by either party thereto, the plaintiff and defendant entered into a new agreement, for the purpose of rescinding the contract sued on, and discharging the defendant from any obligatory effect thereof, to the effect that defendant agreed to reimburse the plaintiff the expenses that he had incurred in seeking to effect a sale of said land, in pursuance of the contract sued on, and that the defendant should be released from any liability under the contract sued on, and that, by virtue of defendant's said agreement to reimburse the plaintiff his expenses as aforesaid, the plaintiff released the defendant from the binding effect of the contract sued on, accepting defendant's said agreement to reimburse him his said expenses, as an accord and satisfaction of the contract sued on, and as a full discharge of the defendant from all liability thereunder; and furthermore, that, in pursuance of defendant's said agreement, it credited the amount of plaintiff's said expenses, to wit, fifty-two dollars, on a note that defendant then held against said plaintiff; and

"(2)  That on the 3d day of September, 1910, the plaintiff was duly adjudicated a bankrupt, in the District Court of the United States for the Western Division of the Southern District of Mississippi, upon plaintiff's petition filed therefor in said cause; that shortly thereafter, and prior to the commencement of the instant suit by the plaintiff against the defendant, one W. D. Watts was duly appointed trustee, by said court, of plaintiff's estate in bankruptcy, whereby all of plaintiff's interest, right, and title, under and by virtue of the contract sued on, were divested from him and vested in said trustee, as of the date said plaintiff was adjudicated a bankrupt; and that,

108 Miss. 25

in consequence thereof, the plaintiff had no right to institute his said suit against the said defendant, and has no right to maintain the same."

In addition to the foregoing, defendant filed the following plea, which was sworn to, viz.:

"Now comes the defendant, the Sunflower Bank, and says that, while the contract sued on was executed in the name of said defendant, by its president, A. B. Smith, and its cashier, W. R. Early, the same was executed by them, without any legal authority therefor from said defendant, or its board of directors, and therefore said defendant denies that it executed the contract sued on, as alleged by the plaintiff in his declaration; and of this said defendant puts itself upon the country."

A counter notice filed by plaintiff was withdrawn with permission of the court, and defendant was permitted to file the following affidavit:

"Now comes the defendant, the Sunflower Bank, by W. R. Early, its president, and makes oath that the contract sued on was not executed by the defendant bank, nor were the president and cashier, who signed the same, authorized to execute it for the defendant bank."

The principal grounds relied on for a reversal are that the contract sued on is a unilateral contract and that the contract was without consideration.

It appears from the evidence in the case that Mr. Pitts was a real estate broker, and the land was listed with him for sale. Mr. Pitts accepted the commission and did undertake to make a sale of the land. From this it appears that the contract was executed; each party having carried out his part of the agreement. The bank did list the lands with Mr. Pitts, and Mr. Pitts did make an effort to sell the land, which involved the expenditure of a not inconsiderable sum of money. Leaving out of view the possible implied obligation of Smith to do just what he seems to have done when he accepted the contract, and assuming that the contract does not in terms or by neces-

sary implication, bind Mr. Pitts to do anything, we believe that the fact that the contract was fully executed confers upon Mr. Pitts a cause of action against the bank.

Stated in a different way, we will assume, for the purposes of this decision, that the contract as it was written did not oblige Pitts to do anything; that the bank could not have sued Smith for a breach of his contract, because he had not agreed to do anything.

Mr. Pitts did, however, elect to accept the contract, and did proceed to incur expense and put himself to considerable expense in an effort to find a purchaser for the land.

Pitts testified that it was understood and agreed at the time and before the execution of the written contract that he should advertise and make every effort to sell the land listed with him. This testimony was objected to by defendant, and objection overruled.

It will be observed that with the parol testimony the contract in the present case is strikingly similar to the contract in *Smith* v. *Cauthen,* 98 Miss. 746, 54 So. 844. In that case the court said:

"It is manifest that the real consideration for the option was the listing and advertising of the property for sale by Cauthen; the one dollar being merely nominal. Where the consideration for an option is the performance of certain acts, until such acts are performed the promise to convey is not binding upon the promisor and is revocable at his pleasure; but, when such acts are performed, the consideration arises, and the promise to convey then becomes irrevocable. 21 Am. & Eng. Ency. Law (2d Ed.)"

In *Dodge* v. *Cutrer,* 101 Miss. 845, 58 So. 208, Judge McLEAN, speaking for the court, said:

"The rule is well settled that ordinarily parol evidence is admissible to explain, or even contradict, a written contract as to the mere consideration."

See *Dodge* v. *Cutrer, supra,* and case there cited.

In this contract, as construed by appellant, no consideration is recited and none is implied. The main contention of appellant is that the contract sued on is a unilateral contract.

The parol evidence introduced does not vary the express terms of the contract, for the simple reason that the contract does not recite any consideration.

If no consideration is expressed in a written contract, the real consideration may be shown. Elliott on Contracts, sec. 247.

We do not think there was any error in admitting parol evidence to show the consideration, nor was there error in permitting the witness to testify that he had performed or executed his part of the contract. There is nothing in the testimony of Mr. Pitts inconsistent with the terms of the written instrument, and his testimony does not in any sense vary the terms of the contract.

"The terms of an obligation assumed to be valid cannot be varied by parol; but it may be shown by parol what caused the party to thus oblige himself. That consists with the written obligation, and does not vary it." *Cocke* v. *Blackbourn,* 57 Miss. 689.

The issue presented by the plea of accord and satisfaction was properly presented to the jury upon the conflicting evidence in reference thereto.

It is claimed that Mr. Pitts cannot recover under the facts of the case, because it is undisputed that the bank sold the land for less than thirty dollars per acre. The land consisted of several tracts amounting in the aggregate to one thousand, two hundred and twenty-four acres, and was sold for thirty-three thousand, four hundred and forty-eight dollars—something over twenty-seven dollars per acre. Assuming that the contract bound both parties not to sell the land at less than thirty dollars per acre, it appears that the bank breached its own contract upon that feature. We cannot assent to the proposition that the bank can bar a recovery upon the plea that it violated

its obligations. To hold this, it seems to us, would be to permit a wrongdoer to nullify his contract by his own wrong to the prejudice of the other party to the contract.

We have carefully considered every point raised by the very able briefs for appellant, and are unable to find any prejudicial error in the record.

*Affirmed.*